IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMARQUEIS WAYNE JOHNSON, ) | |
| #178 713 ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 2:11-CV-842-TMH |
| ) | [WO] |
| WARDEN HETZEL, *et al*., ) | |
| ) | |
|     Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff is an inmate in the custody of the Alabama Department of Corrections. He filed this *pro se* 42 U.S.C. § 1983 action on October 7, 2011 complaining that Defendants are violating his right to due process and equal protection by housing him in a restricted privileges dorm, improperly charging him a co-pay for medical visits, and denying him access to adequate legal resources. Plaintiff further complains that he was not allowed to attend a religious service on once occasion. The complaint is filed against Warden Gary Hetzel, Deputy Warden Kenneth Sconyers, Captain Gwendolyn Babers, Lieutenant Logan, and Sergeant Peavy. Plaintiff seeks a preliminary and permanent injunction. The court also considers Plaintiff's request for relief to include a claim for damages ("order such additional relief as this court may deem just and proper."). (*Doc. No. 1*.)

Upon review of the complaint, the court concludes that dismissal of the complaint prior to service of process is appropriate in accordance with the provisions of 28 U.S.C. §

1915(e)(2)(B).[1]

# I. DISCUSSION[2]

*A. The Housing Claim*

   *i. Due Process*

On August 18, 2011 Defendants placed Plaintiff in segregation as a result of a disciplinary infraction. Plaintiff finished serving his time in segregation on September 21, 2011. On September 22, 2011 Defendants moved Plaintiff to the restricted privileges dorm because there was no bed space available in general population. Defendants placed Plaintiff on a "kick out" list which directs his release from the restricted privileges dorm "ASAP" as bed space in general population becomes available. Plaintiff claims that Defendants are violating his due process rights by housing him in a restricted privileges dorm when he has not violated any institutional rules or regulations. (*Doc. No. 1 and attachment*.)

In order to state a claim for denial of due process under the Fourteenth Amendment, Plaintiff must allege that a constitutionally protected life, liberty, or property interest was at stake. The Constitution itself does not give prisoners an interest in being classified to a particular area within a penal facility. *Cf. Meachum v. Fano*, 427 U. S. 215, 224 (1976) ("The Constitution does not require that the State have more than one prison for convicted

---

[1] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

[2] All of the facts discussed in this Recommendation are taken from the plaintiff's complaint.

felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution."). Further, the law is well settled that prison administrators are accorded wide deference in determining the policies and procedures for handling inmate populations, and federal courts do not generally interfere in such discretionary decisions. *See generally Sweet v. South Carolina Department of Corrections,* 529 F.2d 854, 859 (4th Cir. 1975) ( *en banc* ) (describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation).

While a state can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976), quoted in *Sandin,* 515 U.S. at 480; *Hewitt v. Helms,* 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")

Here, Plaintiff has not shown that his placement in the restricted privileges dorm due to lack of bed space in the general population has subjected him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115. Because Plaintiff has not alleged deprivation of a protected liberty interest, his complaint fails to state a due process claim based on his housing assignment. *See id.* at 487; *Griffin v. Vaughn,* 112 F.3d 703, 706 (3rd Cir. 1997). This claim is, therefore, due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i). *See Neitzke v. Williams*, 489 U.S. 319 (1989).

### ii. Equal Protection

Plaintiff also complains that his placement in the restricted privileges dorm absent his violation of any institutional rules or regulations violates his right to equal protection. Equal protection principles require generally that government officials behave in a way such "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Plaintiff fails, however, to provide any facts in support of his discrimination claim. That is, he does not allege that another inmate receivable more favorable treatment, that this inmate is similarly situated to him, and that he was invidiously discriminated against on account of some protected constitutional interest.

In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest." *Jones v. Ray,* 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Florida Pardons &*

4

*Parole Comm'n,* 785 F.2d 929, 932-33 (11th Cir. 1986) ( *per curiam* )). Thus, the absence of relevant allegations precludes the court from finding a plausible equal protection claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). This claim is, therefore, due to be dismissed in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(ii). *See Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) ("In civil rights actions, ... a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

*B. The Religion Claim*

Plaintiff complains that he was not allowed to attend a Jumah service on September 23, 2011 while housed in the restricted privileges dorm. He asserts that his requests to Defendants Babers and Sconyers to attend the service were ignored. (*Doc. No. 1.*)

Inmates have a constitutional right to the free exercise of religion. *See Johnson v. Avery*, 393 U.S. 483, 486 (1969). The court is mindful, however, that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). In determining whether prison rules and regulations pass constitutional muster, courts apply a lesser standard of scrutiny when reviewing alleged violations of protected rights out of deference to the complexities of prison administration with which federal courts are not adept at dealing. *See Turner v. Safley*, 482 U.S. 78, 81 (1987). Under *Turner*, [federal] action by prison officials that infringes upon a prisoner's First Amendment rights is valid if it is reasonably related to

5

legitimate penological interests. *Id.* at 89.

While the reason for Plaintiff's inability to attend a Jumah service on one occasion is not apparent from the complaint, Plaintiff fails to allege that the restriction imposed on him was not reasonably related to the prison's legitimate penological interests nor has he alleged that he was not permitted to actually engage in any sort of religious observance within the restricted dorm. Without any allegation or indication that he was denied the opportunity to participate in other religious observances of his faith, he fails to demonstrate that his inability to attend a Jumah service on September 23, 2011 deprived him of his constitutional right to practice his religion. *See O'Lone v. Shabazz,* 482 U.S. 342, 351 (1987). In this case, Plaintiff neither alleges much less shows that he was denied other opportunities to practice his religion such as appropriate diet, fasting, prayer, and access to the Quran. *See Al-Alamin v. Gramley,* 926 F.2d 680, 688-89 (7th Cir. 1991) (sporadic Jumah services not alone constitutionally deficient). The absence of relevant allegations precludes the court from finding a plausible First Amendment claim, and it is, therefore, due to be dismissed. *See Iqbal,* 129 S.Ct. at 1949; 28 U.S.C. § 1915(e)(2)(B)(ii).

C. *Access to Courts*

Plaintiff complains that he is not allowed to engage in computer research while housed in the restricted privileges dorm which is the only way to do case research because the Easterling Correctional Facility does not have any legal books. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental

constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable but only where the inmate is able to demonstrate actual injury from such deprivation. *Id*. at 349.  The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 353.  Rather, the *Lewis* Court concluded that the *Bounds* decision stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.  Additionally, the Court found that "[b]ecause *Bounds* did not create an abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id*. at 353; *see also Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) ("prison officials' actions which allegedly infringed an inmate's right of access to the courts must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim); *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (inmate must demonstrate that inability to gain access to legal materials resulted in "actual injury" to his "capacity of bringing contemplated challenges to sentences or conditions of confinement before the courts").

Here, Plaintiff has not established a viable claim that he has been denied access to the

courts based on his claim that he has been denied access to a computer in order to engage in case research. He has not shown that Defendants engaged in conduct that so hindered his efforts to pursue a non-frivolous legal claim to such a degree that he experienced adverse consequences or an <u>actual</u> injury from the alleged deprivation. *Lewis*, 518 U.S. at 349. Because Plaintiff's allegation fails to articulate any "actual injury" accruing to him, this claim is due to be dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).[3] *Neitzke*, 490 U.S. 319.

*D.  Medical Co-Pay*

On September 25, 2011 Plaintiff received a pass to go to the healthcare unit after complaining to a correctional officer that he was not feeling well. At the infirmary, medical personnel informed Plaintiff that he would be charge a $3.00 co-payment for his visit. Plaintiff complains that the condition for which he sought medical care - vomiting - was an emergency and pursuant to prison policy he should not have been charged a co-pay. Imposition of a fee for medical services, Plaintiff claims, violates his Eighth Amendment rights and is a violation of prison rules.

Requiring inmates with adequate resources to pay for a small portion of their medical care does not necessarily result in arbitrary or burdensome procedures which constitute a violation of the Eighth Amendment. *See Reynolds v. Wagner*, 936 F. Supp. 1216, 1224 (E.D.

---

[3]The court notes that Plaintiff conclusorily alleges that Defendants are violating his right to equal protection because he is not allowed to use the computer for case research while he is housed in the restricted privileges dorm but other inmates not so housed are allowed such access. This claim fails to state a claim for relief for the reasons set forth in Section II(A)(ii).

Pa. 1996). Plaintiff does not allege that he was refused <u>necessary</u> medical treatment because he lacked sufficient funds, or that he has been or will be denied necessary medical treatment in the future, or that his health will be endangered by the imposition of a fee for proposed medical service. The allegation contained in Plaintiff's complaint simply reflects his belief that he is entitled to the benefit of cost-free maintenance.

The law is clear that if an inmate is unable to pay for necessary medical care, he must be provided care at state expense. *Estelle v. Gamble*, 429 U.S. 97 (1976). It is equally clear, however, that fee-for-medical and/or dental services programs are not a condition which requires inmates to bear unconstitutional conditions, but rather, forces them to make responsible resource allocation decisions. *See Martin v. DeBruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995). Moreover, not every deviation from an agency's rules is violative of the Constitution. *Smith v. State of Georgia*, 684 F.2d 729 (11th Cir. 1982); *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987). In light of the foregoing, this claim is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i). *See Neitzke*, 490 U.S. 319.

## II. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Plaintiff's Motion for a Preliminary Injunction (*Doc. No. 1*) be DENIED;

2. Plaintiff's complaint be DISMISSED with prejudice prior to service of process under 28 U.S.C. § 1915(e)(2)(B)(i-ii).

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before **December 27, 2011**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of December, 2011.

                                                    /s/Charles S. Coody  
                                                  CHARLES S. COODY  
                                                  UNITED STATES MAGISTRATE JUDGE